## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEPHEN G. WHETSTONE,

              *Plaintiff*,

    v.

HOWARD UNIVERSITY, *et al.*,

              *Defendants*.

Civil Action No. 23-2409 (LLA)

### <u>MEMORANDUM OPINION AND ORDER</u>

Stephen G. Whetstone brings this action against Howard University, the Retirement Plan Committee of the Howard University Employees' Retirement Plan, and various John Does. Mr. Whetstone alleges that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by using outdated formulas to calculate benefits paid out to eligible Howard University retirees. Defendants have moved to dismiss his complaint for lack of subject-matter jurisdiction and for failure to state a claim. ECF No. 19. The court will partially grant the motion and dismiss Count II but deny the motion as to the other counts.

### I.      Factual Background and Procedural History

The court draws the following facts, accepted as true, from Mr. Whetstone's complaint and the parties' motions presently before the court. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

### A.     Factual Background

Howard University established its Employees' Retirement Plan (the "Plan") in July 1976. ECF No. 15 ¶ 53.  It qualifies as an "employee pension benefit plan" and a "defined benefit plan" under ERISA.  *Id.* ¶ 54 (citing 29 U.S.C. § 1002(2)(A), (35)).  Howard University "froze the plan and benefit accruals" in June 2010.  *Id.* ¶ 55.

The Plan defines the "normal retirement age" as sixty-five but permits both early and delayed retirement when certain conditions are met.  ECF No. 15 ¶ 59; ECF No. 19-3, at 16.  Early retirement is proper if the participant's age plus years of service exceeds seventy.  ECF No. 19-3, at 16.  Should a participant choose early retirement, they are penalized with a roughly 0.5% per month reduction for the first five years of benefit payouts and a roughly 0.3% reduction for the following five years.  *Id.* at 19-20.  Delayed retiree participants are eligible for the higher of (1) "the normal retirement benefit plus the Dynamic Benefit as of the participant's benefit commencement date, or (2) an actuarially adjusted version of Option 1 using the Plan's definition of 'Actuarial Equivalent.'"  ECF No. 20, at 8; *see* ECF No. 19-3, at 19.  The delayed retirement option is "essentially the opposite of an actuarial reduction for early retirement."  ECF No. 19, at 6.  The Plan's definition of "actuarial equivalence" is written in the context of calculating lump-sum distributions, but it specifies use of the 1984 Unisex Pension Mortality Table ("UP-84") and a 7% interest rate.  ECF No. 19-3, at 2-3.  Conversions between "normal retirement age" and either early or delayed retirement are known as "vertical conversions."  ECF No. 15 ¶¶ 41-44.

The default form of retirement benefit is a single life annuity ("SLA"), which consists of a monthly benefit paid out for the duration of the plan participant's life.  *Id.* ¶¶ 6, 56.  Married participants typically receive a joint and survivor annuity ("JSA"), which "provides retirees with a monthly annuity for their lives, and, when they die, a contingent annuity for the life of their spouse or beneficiary."  *Id.* ¶¶ 6-7 (citing 29 U.S.C. § 1055(a)).  There are several JSA options,

and each varies in the amount of benefits a spouse may receive upon a participant's death.  For example, "[a] 50% JSA pays the spouse half the amount the retiree received each month[,] a 75% JSA pays the spouse three-quarters of what the retiree received each month," and so on.  *Id.* ¶ 7.

The SLA is calculated using a four-step formula.  *Id.* ¶ 56.  Once the SLA is determined, the Plan uses a formula to convert the SLA into an alternative form, like a JSA.  *Id.* ¶¶ 57-60.  Under ERISA Section 205(d), qualified JSAs must be the "actuarial equivalent" of the SLA.  29 U.S.C. § 1055(d).  All of the Plan's JSA options are qualified under ERISA.  ECF No. 15 ¶ 57; 29 U.S.C. § 1055(d)(1)(A).  The Plan uses the UP-84 Mortality Table and a 7% interest rate when converting an SLA into a JSA.  ECF No. 15 ¶ 58; ECF No. 19-4, at 101.  Conversions between an SLA and other forms of benefits, like JSAs, are known as "horizontal conversions."  ECF No. 15 ¶ 43.

Mr. Whetstone participated in the Plan.  *Id.* ¶ 24.  He worked at Howard University for approximately fourteen years and began receiving his benefits on September 1, 2018.  *Id.* Mr. Whetstone retired when he was seventy, so his benefits were calculated using the delayed retirement formulas.  ECF No. 19-2, at 9.  His SLA was $680.50 per month.  ECF No. 15 ¶ 83. Mr. Whetstone instead chose a 66 2/3% JSA, which pays him $584.73 per month.  *Id.* Mr. Whetstone believes that if the Plan had used "reasonable actuarial assumptions"—in the form of the Treasury Department's preferred numbers (hereinafter "Treasury Assumptions")—to make this horizontal conversion, his monthly payout would be $602.72, amounting to $17.99 more per month.  *Id.*  He claims that the Plan is using "antiquated actuarial assumptions"—the UP-84 Mortality Table and a 7% interest rate—to convert SLAs into JSAs, resulting in JSAs that are not the "actuarial equivalent" of the SLA under ERISA Section 205(d).  *Id.*

**B.      Procedural History**

In August 2023, Mr. Whetstone brought this action on behalf of himself and similarly situated Plan participants, raising three counts under ERISA: violation of the JSA actuarial equivalence requirement under ERISA Section 205(d), 29 U.S.C. § 1055(d) (Count I); violation of the definitely determinable rules requirement under ERISA Section 402(b)(4), *id.* § 1102(b)(4) (Count II); and breach of fiduciary duty under ERISA Section 404(a)(1), *id.* § 1104(a)(1) (Count III).  ECF No. 15 ¶¶ 86, 98-124.  Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6), ECF No. 19, which has now been fully briefed, ECF Nos. 20, 22.

**II.      Legal Standards**

The plaintiff bears the burden of establishing subject-matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).  In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Id.*

4

### III.    Discussion

In their motion to dismiss, Defendants raise various threshold challenges, including that this court lacks jurisdiction because Mr. Whetstone fails to establish standing, ECF No. 19, at 4-9; that Mr. Whetstone's claims are time-barred, *id.* at 12-13; and that Mr. Whetstone failed to exhaust his administrative remedies, *id.* at 13-14.  Defendants also argue that Mr. Whetstone has failed to state a claim for each count.  *Id.* at 16-21.  The court concludes that Mr. Whetstone has established standing, that Count II is time-barred and must be dismissed, and that Mr. Whetstone has adequately stated a claim with respect to Counts I and III.

### A.    Standing

The court begins, as it must, with jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998).  Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that a plaintiff "must establish that [he has] standing to sue."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  To satisfy the constitutional requirement for standing, the plaintiff must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'"  *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61).

Mr. Whetstone alleges that his monthly benefit amount would increase by $17.99—about 3%—if Defendants had used the more current Treasury Assumptions to convert his SLA to a JSA. ECF No. 15 ¶ 83.  A monetary harm such as this is an "obvious" concrete injury.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).  Defendants counter that if the Plan used Treasury Assumptions across the board (in both Mr. Whetstone's vertical and horizonal conversions), Mr. Whetstone would receive a lower monthly benefit than he receives now, and so he has suffered

no injury.  ECF No. 19, at 4-9.  But Mr. Whetstone is not challenging other aspects of the Plan's conversion methodology; he is focused solely on the horizontal conversion from an SLA to a JSA.  ECF No. 20, 10-12.  Courts have routinely allowed plaintiffs to challenge particular aspects of the conversion formula, including those limited to one type of conversion.  *See, e.g.*, *Belknap v. Partners Healthcare Sys.*, 588 F. Supp. 3d 161, 167-69 (D. Mass. 2022) (denying a motion to dismiss for lack of standing where the plaintiff challenged both the vertical and horizontal conversions); *Masten v. Metro Life Ins. Co.*, 543 F. Supp. 3d 25, 33-37 (S.D.N.Y. 2021) (denying a motion to dismiss where the plaintiffs challenged only a horizontal conversion); *Smith v. U.S. Bancorp*, No. 18-CV-3405, 2019 WL 2644204, at *1, 4 (D. Minn. June 27, 2019) (denying a motion to dismiss where the plaintiffs challenged only a vertical conversion).  In each of these cases, the court rejected the defendants' argument that the beneficiaries were better off under the challenged methodology, explaining that it would accept the plaintiffs' factual assertions that use of outdated assumptions reduced the value of their benefits.  *Belknap*, 588 F. Supp. 3d at 168 ("On a motion to dismiss, it is not for this Court to determine the proper method for calculating an actuarially equivalent benefit; rather, this Court must credit the plaintiff's well-pleaded factual allegations. . . .  The complaint has sufficiently alleged that plaintiff's retirement benefits were reduced because of the outdated mortality assumptions and interest rates used by [the defendant]." (internal quotation marks and alteration omitted) (quoting *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010))); *Masten*, 543 F. Supp. 3d at 33; *Smith*, 2019 WL 2644204, at *3.  This court will do the same and credit Mr. Whetstone's allegations of financial harm.  Accordingly, Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied.

**B.      Merits**

**1.      Whether Mr. Whetstone's Suit is for Benefits Due**

Mr. Whetstone's complaint raises three counts: that Defendants used an outdated formula to perform the SLA-to-JSA conversion, resulting in JSAs that are not "the actuarial equivalent" of the SLA under ERISA Section 205(d) (Count I), ECF No. 15 ¶¶ 98-104; that the Plan does not contain a formula for performing the SLA-to-JSA conversion, violating ERISA Section 402's requirement that the Plan provide a "definitely determinable" benefit (Count II), *id.* ¶¶ 105-111; and that Howard University breached its fiduciary duties under the Plan (Count III), *id.* ¶¶ 112-24. Defendants argue that "the indisputable core" of Mr. Whetstone's complaint "is that he thinks the benefits he is receiving from the Plan are too low." ECF No. 19, at 10. As a result, they argue that his complaint as a whole must instead be interpreted as a challenge brought under ERISA Section 502(a)(1)(B), commonly referred to as the "benefits due" provision. *Id.* The import of this, per Defendants, is that Mr. Whetstone's claims must be dismissed as time-barred or for failure to exhaust his administrative remedies. *Id.* at 12-14. The court concludes that Count II must be read as a claim for benefits due, but that Counts I and III cannot.

ERISA's civil enforcement provision, Section 502, sets forth distinct pathways for bringing suit. Under Section 502(a)(1)(B), a participant or beneficiary can bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The key characteristic of this provision is that it can only be used to enforce the terms of the plan—not to change them. *CIGNA Corp. v. Amara*, 563 U.S. 421, 435-36 (2011). Under Section 502(a)(3), however, a participant, beneficiary, or fiduciary can bring suit "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or

7

the terms of the plan." 29 U.S.C. § 1132(a)(3). This provision "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Section 502(a)(3) is the proper vehicle to seek reformation of the plan or pursue a breach of fiduciary duty. *CIGNA Corp.*, 563 U.S. at 425; *see Varity Corp.*, 516 U.S. at 492; *see also Virtue v. Int'l Bhd. of Teamsters Ret. & Fam. Prot. Plan*, 886 F. Supp. 2d 32, 35-36 (D.D.C. 2012).

For purposes of the motion to dismiss, the court concludes that Counts I and III are claims for equitable relief under ERISA Section 502(a)(3). In Count I, Mr. Whetstone seeks to bring the Plan into compliance with ERISA by changing its method of converting SLAs into JSAs; he does not seek to challenge the calculation of any benefits owed under the terms of the Plan itself. ECF No. 20, at 15. That is a classic claim for plan reformation. *CIGNA*, 563 U.S. at 438-41; *Virtue*, 886 F. Supp. 2d at 35-36. Count III alleges breach of fiduciary duty, which is necessarily equitable. *Varity Corp*, 516 U.S. at 510. To this end, Mr. Whetstone specifically invokes Section 502(a)(3) as the basis for both Counts I and III. ECF No. 15 ¶ 103-04, 123; ECF No. 20, at 15-18. At the pleading stage, Mr. Whetstone is entitled to the benefit of all reasonable inferences. *Iqbal*, 556 U.S. at 678.

To be sure, Mr. Whetstone is seeking an increase in his benefits (and to receive retroactive benefits) through Count I. The complaint seeks as relief, among other things, "an [o]rder . . . requiring Defendants to pay all amounts improperly withheld in the past and that they will withhold in the future . . . to recalculate [benefits] in accordance with ERISA[] . . . [and] to increase the amounts of . . . future benefit payments." ECF No. 15 ¶ 17. But Section 502(a)(3) does not prevent a plaintiff from seeking the benefits that would result from bringing a plan into compliance with ERISA. *N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 134

8

(2d Cir. 2015) (explaining that monetary compensation can constitute equitable relief under Section 502(a)(3)).   Accordingly, Mr. Whetstone may proceed under Section 502(a)(3) for Counts I and III.[1]

The same cannot be said of Count II.   In that count, Mr. Whetstone takes issue with the fact that the Plan does not define "actuarial equivalence" as it applies to SLA-to-JSA conversions. While that could be construed as a request to reform the plan to contain such a definition, Mr. Whetstone specifically invokes Section 502(a)(1)(B)—the benefits due provision—as the basis for Count II.   ECF No. 15 ¶ 110 ("ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides for a private cause of action by a 'participant or beneficiary' 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" (quoting 29 U.S.C. § 1132(a)(1)(B))). Mr. Whetstone attempts to distance himself from this allegation in his opposition brief, claiming that "Plaintiff does not bring a § 502(a)(1)(B) claim because he cannot," ECF No. 20, at 18, but that cannot be squared with the plain language of Paragraph 110 of his amended complaint.   "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (quoting *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003)).   Accordingly, the court must construe Count II as a claim for benefits due.

---

[1] Because Counts I and III are not for benefits due, Mr. Whetstone was not required to exhaust his administrative remedies. *Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 965-66 (D.C. Cir. 2014) (explaining that "there is no exhaustion requirement for ERISA claims alleging statutory—rather than plan-based—violations," like Mr. Whetstone does here).

## 2.      Timeliness

Turning to timeliness, the court concludes that Counts I and III are timely, but that Count II has been brought outside of the statute of limitations and must be dismissed.

### a.      Counts I and II

"ERISA provides no express statute of limitations for 'non-fiduciary-duty' claims" like Counts I and II. *Virtue v. Int'l Bhd. of Teamsters Ret. & Fam. Prot. Plan*, 997 F. Supp. 2d 10, 15 (D.D.C. 2013).  Instead, "the 'court must borrow the most closely analogous statute of limitations from the state in which it sits.'"  *Id.* (alteration and brackets omitted) (quoting *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991)).  Courts in this district have thus uniformly applied a three-year statute of limitations, which is the District of Columbia's statute of limitations for both breach-of-contract claims and claims for which District law does not specify a statute of limitations.  *See id.* at 16; *see also* D.C. Code § 12-301(7) to (8).  "Actions under ERISA, furthermore, follow the discovery rule: that is, the statute of limitations begins to run when 'the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action.'"  *Id.* at 16 (quoting *Connors*, 935 F.2d at 341).

*Count I.*  To be timely, Mr. Whetstone must have brought this claim within three years of the date of its accrual—that is, when he discovered (or should have discovered) the violation of ERISA's actuarial equivalence standard.  *See id.*  Mr. Whetstone alleges that the Plan "does not provide the formula it uses to determine optional forms of benefit like JSAs and to make late retirement adjustments."  ECF No. 15 ¶ 106.  Without that information, he alleges that he was incapable of discovering the violation.  He contends that the claim accrued "only after consulting with legal counsel, as this consultation provided the precise understanding of the benefits determination formula and its potentially detrimental effect on his benefits."  ECF No. 20, at 20.

Defendants counter that the claim instead accrued at the time of breach, which it posits occurred when Mr. Whetstone began collecting benefits in September 2018.  ECF No. 22, at 9.

The court agrees with Mr. Whetstone.  The key touchpoint in many ERISA cases is whether "plaintiff ha[d] sufficient information to allow him to understand the basis for his claim" and when a participant can see "[what] is hidden from them."  *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 559-60 (S.D.N.Y. 2015), *aff'd*, 862 F.3d 198 (2d Cir. 2017); *see Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 729 (D.C. Cir. 2012).  Defendants' argument that a breach of contract claim in the District of Columbia accrues at the time of breach, ECF No. 22, at 8-9, is well taken; however, an ERISA claim is not just any breach.  Indeed, plan participants are often the people "least likely 'to have a clear understanding of the terms of the pension plan and their application to [the] case.'"  *Kifafi*, 701 F.3d 718, 729 (D.C. Cir. 2012) (alteration in original) (quoting *Novella v. Westchester County*, 661 F.3d 128, 146 (2d Cir. 2011)).  Courts tend to apply a fact-specific reasonableness inquiry to determine whether and when a plaintiff knew or should have known that his rights have been violated in this context, especially where benefits plans involve obscure or complex communications.  *See, e.g.*, *Faciane v. Sun Life Assurance Co. of Can.*, 931 F.3d 412, 419 (5th Cir. 2019); *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 208 (2d Cir. 2017) (explaining that participants would have to make "a heroic chain of deductions" to understand the basis of their claim).

Mr. Whetstone plainly alleges that the Plan "does not provide the formula it uses to determine optional forms of benefit like JSAs and to make late retirement adjustments."  ECF No. 15 ¶ 106; *see id.* ¶ 14 ("Defendants use formulas for determining optional forms of benefit that *appear* to be based on the [UP-84 Mortality Table and a 7% interest rate] . . . ." (emphasis added)).  After crediting all inferences in Mr. Whetstone's favor, the court concludes that he could

not have known the formula the Plan was using for SLA-to-JSA conversions at the time he began receiving benefits.  Accordingly, at this stage of the litigation, the court will credit that his claim accrued at a later date—perhaps when he consulted with his lawyers, maybe before—which is sufficient to withstand a motion to dismiss on statute-of-limitations grounds.  *See Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 788 (D.C. Cir. 2019) ("At the motion to dismiss stage, dismissal on statute-of-limitations grounds is proper 'only if the complaint on its face is conclusively time-barred.'" (quoting *Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019))).  To the extent the parties wish to dispute the precise date of accrual further, they may do so after discovery.

  *Count II.*  Traditionally, a claim for benefits due accrues when the claim "has been denied." *Virtue*, 997 F. Supp. 2d at 16 (quoting *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520-21 (3d Cir. 2007)).  The denial need not be formal provided that it is "clear and made known to the plan beneficiary."  *Id.* (quoting *Kifafi*, 701 F.3d at 729).  Such a framework does not map on cleanly to this case, where Mr. Whetstone received benefits but believes they were improperly calculated. ECF No. 22, at 9.  Thus, the same standard that applied to Count I applies to Count II: the claim accrued when "plaintiff ha[d] sufficient information to allow him to understand the basis for his claim" and when a participant can see "[what] is hidden from [him]."  *Osberg*, 138 F. Supp. 3d at 560.  But applying the same standard leads to a different result.  Mr. Whetstone alleges in Count II that the Plan violated ERISA by failing to specify the formula by which his SLA was converted into a JSA.  ECF No. 15 ¶¶ 106, 109; ECF No. 20, at 29-30.  Such an omission in the Plan documents would have been obvious to Mr. Whetstone by the time he received his initial disbursement of JSA benefits in September 2018, if not before.  Unlike with Count I, observing that the Plan omits the SLA-to-JSA conversion formula does not require advanced deductions or

reasoning.  It simply requires a diligent plaintiff to read (or even skim) the Plan document. Accordingly, Count II accrued, at the latest, by September 2018.  Because this claim was not brought within the three-year window, it is untimely on the face of the complaint and must be dismissed.[2]

### b.      Count III

An ERISA claim for breach of fiduciary duty must be brought within the earlier of (1) six years after "the date of the last action which constituted a part of the breach or violation" or (2) "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(1) through (2).  Defendants do not argue whether Mr. Whetstone's fiduciary claim falls under subsection 1113(1) or 1113(2), instead contending that the claim is one for benefits due under ERISA Section 502 and subject to the District's three-year statute of limitations.  ECF No. 19, at 12-13; ECF No. 22, at 8-12.  Because the court has rejected that argument, *supra* p. 10-12, and in the absence of any argument that Count III is untimely under ERISA Section 413, there is no basis on this record to dismiss Count III as untimely.

### 3.      Whether Count I States a Claim for Relief

In Count I, Mr. Whetstone alleges that the Plan violates ERISA because it fails to provide JSAs that are "the actuarial equivalent" of SLAs.  ECF No. 15 ¶ 100.  Specifically, Mr. Whetstone contends that "because the Plan uses formulas based on antiquated, unreasonable actuarial

---

[2] Even if Count II were timely, the court would dismiss it under Rule 12(b)(6) because ERISA Section 402(b)(4) does not require that pension plan benefits be "definitely determinable." *See, e.g.*, *Stamper v. Total Petroleum Inc. Ret. Plan*, 188 F. 3d 1233, 1238-40 (10th Cir. 1999) (explaining that ERISA Section 402(b)(4) does not incorporate an Internal Revenue Service regulation requiring that ERISA plan payments be "definitely determinable" to qualify under the Tax Code); *Dooley v. Am. Airlines, Inc.*, 797 F.2d 1447, 1452 (7th Cir. 1986) (same); *Bilello v. JPMorgan Chase Ret. Plan*, 07-CV-7379, 2009 WL 1108576, at *2-3 (S.D.N.Y. Apr. 24, 2009) (same).

assumptions to calculate JSA benefits, those benefits are not actuarially equivalent to the SLA Defendants offered to Participants," in violation of ERISA Section 205(d).  *Id.* ¶ 101.  Defendants argue that Mr. Whetstone has failed to state a plausible claim for relief on Count I.  Their briefing on this issue is muddled, with their opening and reply briefs seemingly taking inconsistent positions.  *Compare* ECF No. 19, *with* ECF No. 22.  And it appears that Defendants misunderstand the motion-to-dismiss standard by asking the court to draw inferences in their favor rather than in Mr. Whetstone's.  As far as the court can tell, their arguments boil down to these: (1) ERISA Section 205(d)(1)(B) creates no substantive requirement for actuarial equivalence; (2) the Internal Revenue Service ("IRS") has approved the Plan's SLA-to-JSA conversion method; (3) any underpayment does not meet the IRS's materiality threshold; and (4) use of the UP-84 Mortality Table and 7% interest rate is reasonable under the law.  The court is not persuaded.

First, Defendants offhandedly suggest that they "could not have 'violated'" ERISA by using the UP-84 Mortality Table and 7% interest rate because ERISA Section 205(d)(1)(B) does not impose "substantive requirements."  ECF No. 19, at 16 n.9 (citing 29 U.S.C. § 1055(a)(1)). Not so.  ERISA Section 205(d)(1)(B) defines a JSA as being "the actuarial equivalent of a single annuity for the life of the participant."  28 U.S.C. § 1055(d)(1)(B).  Defendants do not explain why that definition would not constrain SLA-to-JSA conversions under the Plan, and many courts have allowed claims on the basis of this provision to proceed past a motion to dismiss.  *See Paieri v. W. Conf. of Teamsters Pension Tr.*, No. 23-CV-922, 2024 WL 3455269, at *9-10 (W.D. Wash. June 21, 2024) (finding that the plaintiff stated a plausible claim under ERISA Section 205(d)(1)(B) where the pension plan "uses mortality tables that do not reflect current mortality assumptions and improvements in mortality and result in [JSAs] that are less than the actuarial equivalent of [SLAs] when using reasonable . . . assumptions" (final alteration in original)); *see*

*also Hamrick v. E.I. du Pont de Nemours & Co.*, No. 23-CV-238, 2024 WL 359240, at *4-5 (D. Del. Jan. 31, 2024); *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 754 (D. Minn. 2022); *Smith v. Rockwell Automation, Inc.*, 438 F. Supp. 3d 912, 924 (E.D. Wis. 2020).

Second, Defendants argue in their opening brief that the IRS has approved the Plan's conversion formula, thereby implicitly finding that the actuarial assumptions (the UP-84 Mortality Table and 7% interest rate) comply with regulatory requirements that "reasonable assumptions" be used to determine actuarially equivalent forms of benefits.  ECF No. 19, at 14-19.  Specifically, Defendants point to IRS checklists used to assess the Plan's Form 5500, which prompts those reviewing the form to consider whether "the plan provide[s] for the payment of benefits in the form of a Qualified Joint and Survivor Annuity (QJSA) in the case of a vested participant who survives until the annuity starting date."  *Id.* at 17.  Defendants maintain that, after using that checklist, the IRS issued a determination letter stating that "the Plan and related trust are designed in accordance with applicable sections of the Internal Revenue Code."  *Id.* at 15 (emphasis omitted); *see* ECF No. 19-5, at 47.  Defendants suggest that because the Plan's Form 5500 expressly references the UP-84 Mortality Table and 7% rate, the IRS must have specifically considered—and approved—use of that formula for SLA-to-JSA conversions.  ECF No. 19, at 15.

Even if it were appropriate to consider an IRS's determination letter—and it is not[3]— Defendants' argument fails.  By their own terms, IRS determination letters are not binding but rather "express[] an opinion" on the Plan.  IRS, *Determination Letters for Individually Designed*

---

[3] When ruling on a motion to dismiss, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (alteration in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).  While the court may take judicial notice of "information posted on official public websites of government agencies," the IRS's determination letters regarding the Plan are not such documents.  *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

*Retirement Plans FAQs*.[4]  More importantly, the IRS does not review the Plan's Form 5500 for compliance with ERISA.  "A favorable determination letter indicates only that an employee retirement plan qualifies for favorable tax treatment by meeting the formal requirements of [the Tax Code]."  *Esden v. Bank of Boston*, 229 F.3d 154, 176 (2d Cir. 2000); *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 205 n.4 (2d Cir. 2007) ("[A] determination letter does not consider whether actuarial assumptions are reasonable.").

Defendants seemingly walk this argument back in their reply brief, instead framing their reference to the determination letters and other IRS guidance as "relevant to the plausibility of [Mr. Whetstone]'s claims."  ECF No. 22, at 13.  But the court will not consider these letters—which are outside the motion-to-dismiss record and expressly unhelpful, *see supra* p. 15 n.3—to dismiss Count I.

Third, Defendants point to IRS regulations to argue that the difference in benefits between what the Plan pays and what Mr. Whetstone believes is owed does not rise to a level the IRS considers material, with the implication being that Mr. Whetstone's claim is not actionable.  ECF No. 19, at 17-18.  But, again, it is not obvious that IRS regulations would provide the relevant metric for determining compliance with ERISA.  In any event, at the motion-to-dismiss stage, a plaintiff need only "nudge[] [his] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "A claim is facially plausible when the complaint contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).  Mr. Whetstone has done that here.

_____

[4] *Available at* https://perma.cc/7KC5-6BPU.

Finally, although Defendants claim otherwise, ECF No. 22, at 12, the crux of their argument seems to be that using the UP-84 Mortality Table and 7% interest rate is reasonable as a matter of law.  But numerous courts have rejected this argument at the motion-to-dismiss stage. *Smith*, 438 F. Supp. 3d at 912 (explaining that using an outdated mortality table "give[s] rise to a reasonable inference that the plan's actuarial assumptions are unreasonable and thus do not produce actuarial equivalence"); *Hamrick*, No. 23-CV-238, 2024 WL 359240, at *4-5; *Adams*, 635 F. Supp. 3d at 754.  Defendants' arguments to contrary can be "resolved after discovery, including, if necessary, expert actuarial testimony."  *Smith*, 438 F. Supp. 3d at 924.

#### 4.     Whether Count III States a Claim for Relief

ERISA imposes numerous fiduciary duties on those tasked with overseeing and managing pension and benefits plans.  *See* 29 U.S.C. § 1104.  Mr. Whetstone alleges that the Plan Committee and its members are fiduciaries under the law.  ECF No. 15 ¶ 115.  He further alleges that they violated the duties to act loyally and "solely in the interest of the participants and beneficiaries," the duty to act with "care, skill, prudence, and diligence," and the duty to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of" ERISA.  *Id.* ¶ 114 (emphasis omitted) (quoting 29 U.S.C. § 1104(a)(1)).  A violation of one of ERISA's substantive requirements—like the actuarial equivalence standard—can constitute a breach of a fiduciary duty.  *See John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Grp., Inc. Profit Sharing Plan*, 26 F.3d 360, 367 (2d Cir. 1994). Thus, the fact that Mr. Whetstone has stated a claim under Count I serves as a basis for his stating a claim under Count III.  Defendants nonetheless argue that Count III should be dismissed for several reasons pertinent to all Defendants—that ERISA does not require plan fiduciaries to police Plans for ERISA violations; that the IRS's purported approval eviscerates any claim under the duty

to act prudently; and that Mr. Whetstone's complaint lacks sufficient factual detail—and several specific to Howard University.  The court is unconvinced.

First, Defendants suggest that ERISA imposes no affirmative duty on any fiduciary to "refuse to follow plan terms that are not consistent with ERISA."  ECF No. 19, at 22.  In other words, Defendants argue that they had no obligation to raise the alarm about the potential violation caused by using outdated conversion factors.  The plain text of ERISA belies this argument. ERISA Section 404 requires fiduciaries to act "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this subchapter*."  29 U.S.C. § 1104(a)(1)(D) (emphasis added).  As the Supreme Court has explained, "[t]his provision makes clear that the duty of prudence trumps the instructions of a plan document."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014); *see Foltz v. U.S. News & World Report, Inc.*, 613 F. Supp. 634, 639 (D.D.C. 1985) (reasoning that adherence to a benefits plan's language provides no justification for violating ERISA or other federal laws). Accordingly, the fact that the Committee and its members were abiding by the Plan's text does not necessarily defeat a claim for breach of fiduciary duty.

Second, Defendants contend that they did not violate their fiduciary duty to act prudently because the IRS has concluded "that the Plan was qualified" and complied with the law.  ECF No. 19, at 23.  "ERISA defines the duty of prudence in terms of what a prudent person would do 'in the conduct of an enterprise of a like character and with like aims.'"  *Fifth Third Bancorp*, 573 U.S. at 420 (quoting 29 U.S.C. § 1104(a)(1)(B)).  For the reasons already explained, the IRS's determination letters are not part of the motion-to-dismiss record, nor do they address whether the Plan complies with ERISA's requirements.  *See supra* p. 16 n.4.  While Defendants may later seek

to rely on them as evidence of what a prudent person might do in a fiduciary's shoes, they are not a basis to dismiss Count III.

Third, Defendants argue that there is no violation of the duty of loyalty because Mr. Whetstone fails to provide specific factual assertions to support his legal conclusions. ECF No. 19, at 23-24. They further add that Mr. Whetstone may not amend his complaint with new facts offered for the first time in his opposition brief. ECF No. 22, at 18-19. But that is not what is happening here. Mr. Whetstone alleges in the complaint that the Plan "had not been adequately reviewed" by the Plan Administrators. ECF No. 15 ¶ 119. While the complaint could have contained more detail about what an "adequate[] review[]" would have revealed, the clear import of the complaint is that the fiduciaries would have noticed that the Plan lacked a formula for SLA-to-JSA conversions and was instead relying on outdated formulas elsewhere referenced in the Plan. Giving Mr. Whetstone the benefit of reasonable inferences, he has sufficiently alleged that the Committee (and the individuals comprising it) are responsible for his inadequate conversion. *See Iqbal*, 662 U.S. at 678.

Finally, as to Howard University, Mr. Whetstone alleges a failure to supervise and monitor the Committee and its members by "allowing them to administer a Plan that had not been adequately reviewed and, therefore, to pay benefits that were not actuarially equivalent." ECF No. 15 ¶ 119. Howard University is the "plan sponsor" and "administrator" within the meaning of ERISA, meaning that it has specific responsibilities under the law. *Id.* ¶ 25 (citing 29 U.S.C. §§ 1002(16)(A) through (B)). Although ERISA does not explicitly create a duty to monitor, "[a]n appointing fiduciary's duty to monitor his appointees is well-established." *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005) (collecting cases); *see Harris v. Koenig*, 602 F. Supp. 2d 39, 60 (D.D.C. 2009) (explaining that "monitoring duties of appointing fiduciaries under

ERISA . . . are well established in the case law" (alteration in original)).  As Mr. Whetstone acknowledges, a "duty to monitor claim hinges on the existence of an underlying breach by the [Plan Administrators]."  ECF No. 20, at 35; *see Russell v. Harman Int'l Indus., Inc.*, 945 F. Supp. 2d 68, 72 n.2 (D.D.C. 2013).  As explained earlier, the complaint adequately states a claim for an underlying breach, so a duty to monitor claim can flow from it.  *See Russell*, 945 F. Supp. 2d at 72 n.2 ("Where a claim is predicated on the existence of an underlying breach of fiduciary duty, the claims rise and fall together.").

Defendants argue that the duty to monitor is limited, citing *Hudson v. National Football League Management Council*, No. 18-CV-04483, 2019 WL 5722220 (S.D.N.Y. Sept. 5, 2019), for the proposition that the duty of an appointing entity "extends only to whether [the] trustees are executing their functions, not to the substance of their decisions."  ECF No. 19, at 24 (quoting *Hudson*, 2019 WL 5722220, at *12).  But, as Mr. Whetstone points out, *Hudson* is inapposite because the role of the appointing entity in that case was much more limited than the role Howard University has with respect to the Plan.  In *Hudson*, the appointing entities had administrative roles and lacked substantive authority to affect the terms of the plan.  2019 WL572220, at *30-34. Howard University is named as a fiduciary in the Plan documents and has the authority to retain control of the operation and administration of the Plan.  ECF No. 19-3, at 46-47.  It is further tasked with various actuarial duties and information sharing.  *Id.*  That is hardly the removed role of the appointing entities in *Hudson*.  At this stage, the court can infer that such duties include oversight of the Plan for compliance with ERISA.[5]

---

[5] Defendants argue that Mr. Whetstone "is saying that the settlor had a duty to monitor the fiduciary to make sure the fiduciary did not comply with the terms of the plan the settlor had established" and that "ERISA does not envision such a claim."  ECF No. 19, at 25 n.14.  The court does not interpret Mr. Whetstone's claim in this manner.  Rather, Mr. Whetstone argues that the

### IV.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 19, is hereby **GRANTED** in part and **DENIED** in part.  Count II is **DISMISSED**.  Counts I and III remain before the court.  Defendants shall file an answer to Mr. Whetstone's complaint on or before September 26, 2024.  *See* Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date:   September 12, 2024

---

settlor has a duty to monitor the fiduciary *for compliance with ERISA*.  There is no reason to think ERISA prohibits such a claim, and Defendants do not suggest one.